Case No. 23-1281, et al., VTCU Corp. Petitioner v. National Labor Relations Board Mr. Goldberg for the petitioner, Ms. Cheekney for the respondent Good morning. May it please the Court, my name is Andy Goldberg, I'm the lawyer for the appellant, VTCU I've asked for two minutes for rebuttal at the end, if I may do so We are here this morning to ask the Court to reverse the National Labor Relations Board finding of an unlawful refusal to bargain and the attendance certification of a bargaining agent in order of a rerun election or at least a hearing on the merits of the objections The Board erroneously dismissed challenges to a representation election without a hearing and improperly certified the union as a lawful bargaining representative So we are asking for either a rerun election or, short of that, a hearing on the objections We're here before you to argue these following main points One, that the three-week election period and the attendant problems that arose from that were too short that void ballots should not have been counted and that the threats which were made by union representatives to eligible voters also tainted the election such that it should be overturned So as to those first two points, I mean, didn't VTCU agree to a three-week election period and then also agree to count those ballots? So the problem with the argument about the agreement as the Board has put forth is that it fails to recognize the process for entering into a stipulated agreement That is not a separate and distinct agreement where the parties go aside into a room, come up on their own That is a Board-managed process, and at the end of the day, when the parties submit that stipulation, the regional director has the authority to approve or reject that stipulation and find that the parties' recommended process is not proper And in fact, this region has given four-week elections in cases with voters who are far fewer in numbers than we have here And the region is responsible and the Board is responsible for ensuring there's an adequate I mean, if the parties agree to a three-week period, and there are instances of a four-week election, there are also instances of shorter elections I mean, the agreement seems to carry some weight For us to say that the regional director committed some error when the parties agreed to a three-week period But the regional director is ultimately responsible And so the parties who are not charged with knowledge of the mail issues, with the processes of whether or not that count is going to make it in time That's all the responsibility of the regional director And that regional director should have known of the issues in the Pocatello area with the mail As a matter of fact, now when you look at the federal elections, those mail ballot elections are being mailed 45 days in advance Another, obviously, federal process And so the regional director should have known And the regional director should have said, this isn't a sufficient amount of time, and we're not going to grant that And the regional director should have done that, notwithstanding the parties' agreement Yes, because that is the process The regional director has to approve the stip What's the point of having a regional It really does matter, and these go on all the time And typically when the parties agree, there's nothing facially unlawful about three weeks as opposed to four And it would be quite unusual if the regional directors wouldn't have enough time in the year to do what you're asking The parties agreed, it's facially lawful, the regional director accepts it That's not unusual, and it's certainly not unlawful I'm not suggesting that it's unlawful I'm suggesting that in this particular case, there was evidence that the regional director should have had And was available to the regional director That the regional director should have known there should have been a longer period of time And we have the people, the evidence that we submit and offer proof of those who didn't get ballots We have the number of people who were eligible to vote versus the number of people who actually voted So there's not just speculation here There was actual evidence that there was some issue with the time period allotted, including the one So you're using what happened after the fact of the agreement to prove that the agreement should not have been accepted In other words, the regional director should have known that you might assert some problems later on This is a facially normal agreement, facially acceptable There's nothing that would cause a regional director, nothing that's on this record To think that there might be issues, and so the party's agreement was accepted That's what's typically done But what I'm suggesting here is that there was evidence that there were issues with the mail itself And that those issues, not after the fact of the approval But even before that, there were issues with the mailings in Pocatello And the regional director was responsible for knowing that The after-the-fact evidence establishes that that period wasn't appropriate And just supports the argument that the regional director should not have approved it in the first place So in addition to that, the board has suggested that we're not entitled to argue that If we don't get a re-run election, we should also have a hearing Because we didn't raise it in the objections and the request for review, which is not entirely accurate We didn't specifically state that for sure, but we did generally say we'd like the decision overturned And a hearing is a remedy, and the remedy when you overturn a decision is one of two things It is either you get a hearing or you get a re-run election And in this case, the board is asking to have the court just accept That its conclusions of law here are valid and appropriate And asking the court to completely defer to their standard Which is really an interpretation of the law And not just the finding of fact, because there were no findings of fact here Don't you understand what you just said? We're hearing you say, it's true, we didn't specifically raise it But the board sort of surmised that's what we would have liked if they had thought about it carefully You have to raise an objection and indicate what it is you're precisely objecting to And what it is you think you're entitled to You didn't ask for a hearing, you forfeited it Well, but a hearing is not an objection, a hearing is a remedy You've got to raise your request for whatever relief you think you're entitled to You didn't raise it, it was forfeited Because the board is there, and they can't respond to that request If you don't raise it, you didn't raise it And now you're saying to us, well, they should have understood That's what we really would have liked to have When it's not routinely done Well, if there is a remedy, if there is It's not, counsel, the board followed procedures that they follow all the time, every day They didn't do anything here that was untoward It just, it's the way they operate And so if you didn't specifically say to them, no, no, in this case You should not follow the norm, you should give us a hearing You didn't raise it, you didn't put them on notice that that was an issue Well, I think they were on notice because we asked for the objections The denial of the objections to be overturned And so that puts it then in their hands to give us a remedy Which includes a hearing or a rerun election Well, it seems that a lot of your objections are either waived As indicated by Judge Edwards, or there's a jurisdictional bar Because they were not exhausted by being specifically acknowledged And you appeal to that relief to the board Even before you've gone through this process Well, the only argument on that particular one is the hearing As opposed to the rerun election Because we did specifically request a rerun election In our filings, all throughout our filings But I guess what I'm saying is you have a lot of objections Some of them were either not raised at all to the board Or they were not raised to the court And the reason for that is because as time goes by And you learn what you're then truly going to be able to establish You're going to focus on those objections where you can In good faith bring forth facts And some of the evidence that has come up later We have chosen to rely on those objections Where we have a good faith belief that we can present evidence in support of those Mr. Goldberg, I was wondering The regional director used a standard for reviewing the alleged election misconduct They used the reasonable doubt standard And in your brief you talk about a different standard that we use In a different line of cases about disenfranchisement And I'm wondering if you think the choice of a test makes a difference in this case We do because there are voters here who were disenfranchised And we believe that those are the standards that should be used Because people did not receive a ballot Other people didn't cast a vote One person's vote came in late And so when you're looking at disenfranchisement of the voters That is really what we are arguing here with respect to the three-week time period And those individuals who didn't get a ballot And the one whose ballot came in late But is that disenfranchisement standard different than asking Whether there's reasonable doubt about the fairness of an election? So there's lots of different ways standards of review have been phrased In the various cases that come before with substantial evidence With deference and what have you At the end of the day the question is Was this a properly conducted election Such that the voters had the reasonable opportunity to vote In a time period that was effective for that election And our position is the time period was not And even if we thought that it wasn't reasonable Are you able to show prejudice here? Prejudice in terms of the voters? In terms of the outcome being different Well I think yes Because we have the 15 Now as it comes clear the 15 voters Who in fact did not receive a ballot The one that came late And plus again those five void ballots Plus the threats against the three other individuals Plus the cases have said That when there's evidence of impropriety Or in this case the election period Not being sufficient and voters impacted You can make the conclusion that others were impacted as well And so that's again part of our argument Based on the number of people who voted and those who did not But if I look at that I'm not sure that I come to you with the same math On this being outcome determinative Because the vote tally was 66 in favor of the union 45 in favor of the employee Add back your five challenge ballots Gets you to 50 Add back those 15 others That still gets you to 20 65 And so you still lose by one And then the one late ballot And then the two people who were threatened So you have to win on all of those counts To demonstrate prejudice But wasn't the one that you're referring to untimely though? The late ballot? Yes And we're saying because of the three-week election period Okay But then going back to Judge Rowe's question You have to win on that first to get to that other one Yes, Your Honor Thank you We'll give you a few minutes on the vote Thank you Please support Barbara Sheehy for the National Labor Relations Board I'm going to start where opposing counsel finished Sort of Judge Rowe's question about the standard of review Or the standard that was used here And Your Honor is absolutely correct The board used the reasonable doubt standard But I want to clarify The reason that the board used the reasonable doubt standard   That are sort of surrounding that issue in the case It's never been raised that that was the wrong standard So I sort of want to start there There's been no challenge that the board used the wrong one There are other tests out there As opposing counsel's correctly articulated to the court So it's never been Could you at least give them credit That if they believe that the other standard was applicable That by inference they believe your standard was incorrect? So here's the problem with that So I think if they had clearly said that Or it was reasonably discernible from their request for review Because that's their opportunity to tell the region That's the opportunity, sorry, to tell the board Hey, we think the region got this wrong So the region very clearly articulated the reasonable doubt test Very clearly it's in the applicable standard Or applicable legal principles So there's no question what the region did Then you look at what did the employer file In its request for review And so what you're asking there is the board You're trying to tell the board We think you need to review and dig deeper into this case Because here's what the region did wrong And in that request for review The only thing they say is the employer cites to National Hot Rod Which is a case out of this court And then it cites to three other cases Cited in National Hot Rod But they don't say They never say you applied the wrong standard They articulate a standard that's in National Hot Rod And then like I said they cite to three other cases Here's the problem with that though The three other cases and National Hot Rod itself Actually don't get into what is the appropriate standard Is it reasonable doubt? Is it the possibility of disenfranchisement? What the issues were in those cases Was the misconduct by the board? Was the misconduct by the employer? Or was the misconduct a responsibility of the parties? Those were what were litigated in those cases So National Hot Rod had to do with Who was at fault for this one employee And a one vote determinative election Who was responsible More responsible I guess For this employee not being able to vote The board said we think it was the employee This court disagreed and said no We think it was the board In the other two cases One of them visiting nurses Had to do with an employee who showed up late And these are the only cases cited in their request for review So without telling the board what we think you did wrong The board is reasonably looking at Okay you say we're inconsistent with our precedent Let's look at what it was Visiting nurses had to do with an employee Who showed up 15 minutes before the ballot Before the vote was to close So it's a manual ballot Shows up 15 minutes late as on arrival She gets a text or email or something from her supervisor She goes to talk to her supervisor She sort of gets way late again Before she actually makes it to the ballot To the voting And she shows up late The board said we don't think that was So there was an allegation there An objection Who was at fault there for her not getting there Was it the employer interfering with her In her last 15 minutes to get there Or was she more at fault Because she had plenty of time According to the board She had plenty of time After she spoke to her supervisor And still getting to the ballot She could have voted So the question in that case was Who's at fault And then in I can't remember Ms. Sheehy, what's the connection here So the connection is This is all to say If the employer doesn't tell the board That it applied the wrong standard So we are dealing then with The reasonable doubt standard I would acknowledge That if it had been clearly raised And they had clearly articulated This standard is wrong Here's what you should have done Then yes, the prejudice showing Is different in that case I won't speak to whether the board Would have come out in a different way Partly because I think fundamentally Isn't the board's view That these tests are different That they would lead to A meaningfully different result Or that they should apply In different contexts I mean, we do seem to have these Two lines of cases With different standards Sure, and the court Has recently addressed this I'm sure the court is aware In GHG This is actually discussed It was a remanded case Just two months ago And I think that's I'm not going to speak for the board Because we'll hear from them on remand As to whether What exactly is the difference What's going to be The dispositive issue On when we apply which tests So I can't answer Whether the board sees A meaningful distinction On what sort of conduct Triggers which test Or what that distinction will be I can certainly acknowledge That the prejudice showing Is different One is possibility Of disenfranchisement And one is actual showing Of disenfranchisement So beyond that I'm not comfortable Sort of trying to speak for the board Because like I said We should hear from them on remand So absolutely There are different tests We're not saying otherwise What we're saying is If you know there are different tests And we all do Because there's lots of different cases out there Applying several different tests If you didn't think the board Did the right one in this case Tell them Don't rely on cases That have nothing to do with Yours Don't just Don't rely on cases That have nothing to do with the issue This didn't have to do with Whether who was at fault In any particular way So fun I'm sorry Go ahead I had another question Sure With respect to counting The ballots The printed ballots You know Looking at the The board's I guess Like the case Case handling manual provision Did the board Or did the regional director Need to find either That the parties agreed That these were signatures Or would the regional director Have to find That they were the actual signatures Because arguably It's not clear That the regional director Did either of those things So I think first What the If we look at what the board Did first with this Is the board First finds that The six ballots Where there's a Where the name is either Printed signature Or printed Signature Were not outcome Determinative So that's sort of the first Wave of defense I think by the board on those But getting to your question About what they found So here What they did I think what the regional director Did here in this case Was that the parties The ballots were flagged They were among A number of ballots Actually got flagged As print And then I think some I think there were 19 total Actually that had print And then they sent out a bunch They sent The recent At the time of the count There were still six So they were Set aside The parties are all in the room At the ballot count These But these ballots Then come up And the parties agree That there's no question About the identity of the voters So that's the whole reason For this provision Is the security of the vote There's no question That these There was no There was no The identity of the voters There was no question That there's actually Evidence of different signature By these people Which is the case For instance in Longmont In this court There was some question there So I think what the What was found here Was that Looking at the ballots The parties agreed That there was No issue With the print Signature So I'm not sure If that answers your question But I don't know That the regional director Has to make the finding First Because the regional director Doesn't get involved As my understanding In the case In the mental It wasn't a disputed issue It wasn't Right The parties agree Right And so again That goes to I think The whole At the beginning Of opposing counsel's argument We had the issue About the consent To the stipulated election agreement This is another instance Where the employer Is trying to Back out of agreements It made Because it doesn't like At the end of the day It didn't like the results Of the election It entered into A stipulated election agreement Set in for the three weeks They had every opportunity To raise apparently These well known Mail issues Never raised them And then they agreed To count the six ballots And so  So I think Unless I don't have anything else I wanted to Just 3D If you'll go do the math So what In terms of Whether it could have been Outcome determinative Or not So which ones are we Which ones do you want Well my math Was indicating that Even with the five Challenge ballots If you add it back in Because you were at 6645 That gets you to the 50 And then there were 15 Other ballots That you could count So you would still be One short Right so And then I guess I didn't understand I guess Until coming in I guess today Just now that the one Late ballot Was also Part of this So I I I don't I don't read Their brief To say that So my position would be That it still is not Outcome determinative They still haven't done it And I'll be quite honest I think the math Is pretty messy In a lot of parts Of their brief So I get quite confused On what's being argued And what numbers Are being used But I do think It's the board's position Right it's 66 to 45 Five challenge ballots 15 And I would point out In the offer of proof It's not The offer of proof Related to the ballots That the employees Would have testified That they didn't Receive a ballot The offer of proof Actually says more Than just that The offer of proof says They didn't receive a ballot Or they received it late We don't even know What the allegation is Of those 15 Was it one who received it Never Or never received it rather And 14 who received it late Because that's a different Question So I think fundamentally You're talking about the people But they never requested A duplicate ballot No I'm talking about The very first objection 3B I think it's 3B Yeah I'm sorry I said 3B Where 3B Where it speaks to They say 17 It's actually 15 Because somebody's Double counted And somebody actually did vote But if you read The objection itself Before you actually Get to the numbers Of people It says never received A ballot Or received it late So we don't even understand What that objection Is  We're getting to So fundamentally This is the last thing I'll say Because I see them over time Fundamentally I think The board views this As a failure of proof case And we would ask For full enforcement Thank you Thank you Mr. Goldberg We'll give you two minutes Thank you So a couple of points That I'd like to talk about One is the well-known Mail issue So again The employer was not aware Of those mailing issues Until after the issues Came up in the election itself So the board has said It's our responsibility To do essentially An analysis So that we knew about it When we had referenced In our briefs That it was a well-known issue We meant it was Well-known Should have been to the board Not the employer's responsibility To do that investigation Because it's the board's Obligation to do so The board has also said That they looked at Those void ballots Figured it was not Outcome determinative And sort of made Their conclusions We're looking at this As a whole    You need to look at The entire context And figure out All of the numbers Of the people That were involved here And not being able To get into it As to the standard We have very clearly In our request for review Talked about Voter disenfranchisement And that was The number one And first argument That we made In terms of the people Not being able to vote And that was the standard That we had argued And talked about But again At the end of the day It is the standard you argue But it's You didn't It seems to me Say that The regional director Applied the wrong standard No we did not Specifically state that We stated the standard That we Applied In an adversarial system It's on the attorneys To make the arguments They want the board To put forward Issues and arguments For the board To address And we set forth The standard that We believe the board Should be following By affirmatively asserting That it was Voter disenfranchisement case The last thing That I would like to I think actually I covered I did cover all the issues I wanted to talk about Thank you Thank you Mr. Goldberg The case is submitted
judges: Rao; Childs; Edwards